Robert KIRKSEY, Sr., and Neva Kirksey, Husband and Wife and Natural Parents and Next of Kin of Robert E. Kirksey, Jr., Deceased, Plaintiffs–Appellants,

v.

OVERTON PUB, INC., d/b/a East End Grill, Dennis Flanagan, James Mark Hooper, and Denny W. Hanna, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 6, 1987.

Permission to Appeal Denied by Supreme Court Oct. 12, 1987.

Eugene C. Gaerig, Memphis, and Ronald L. Taylor, Southaven, Miss., for plaintiffs-appellants.

James R. Garts, Jr., Harris, Shelton, Dunlap and Cobb, and Robert L. Sabbatini, Shuttleworth, Smith and Young, and W. Michael Richards, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendants-appellees, Overton Pub, Inc. d/b/a East End Grill, Dennis Flanagan and James Mark Hooper.

J. Kimbrough Johnson, Thomason, Dendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, for defendant-appellee, Denny W. Hanna.

BROOKS McLEMORE, Special Judge.

The plaintiffs filed this action for the wrongful death of their 27 year old son who died of acute ethaholism after drinking within one hour "ten exotic drinks of high alcoholic content" purchased at the East End Grill. The drinks were drunk pursuant to a bet with the defendant Hanna, another customer of the East End Grill, on the night of February 17, 1985. The plaintiffs sued the corporation that operates the East End Grill, the two bartenders on duty and the other customer, Denny W. Hanna, involved in the bet.

The defendants filed a joint motion to dismiss or for summary judgment. In support of the motion to dismiss, the defendants relied upon the allegations in the Complaint and, in support of the motion for summary judgment filed the Affidavit of Patrick Edward Besant-Matthews, M.D., and excerpts from the testimony of witnesses at an administrative hearing held on behalf of the Alcohol Beverage Commission concerning the proposed revocation or suspension of the liquor license of the Overton Pub, Inc., doing business at East End Grill. Subsequently the entire testimony presented as the administrative hearing before the ABC was filed.

Plaintiffs also filed a motion for summary judgment on the issue of liability alleg-

ing in their motion that the defendants violated T.C.A. § 57–4–203 in that they sold alcoholic beverages to a visibly intoxicated business patron and this fact had been adjudicated by the Alcoholic Beverage Commission and this adjudication had not been appealed and as a result the defendants were guilty of negligence per se.

On May 9, 1986, the defendants' motion to dismiss or for summary judgment was argued at the same time that the plaintiffs' own motion for summary judgment was argued. On the day of argument the plaintiffs filed the Affidavit of Michael A. Todd, M.D. with the trial court.

The trial court granted the defendants' motion for summary judgment and entered an order dismissing the plaintiffs' case on the merits with prejudice on the grounds that the deceased was guilty of contributory negligence as a matter of law.

The plaintiffs have appealed, the issue being whether summary judgment was appropriate under the circumstances of the case.

Plaintiffs contend that (1) the Trial Court erred as there were genuine issues of material fact for the trier of fact, and (2) the consumption of alcoholic beverages rather than the sale of the same is not always the proximate cause of injuries resulting from the consumer's intoxication.

We agree and reverse and remand for trial.

The Trial Court has a duty in a summary judgment proceeding to view the pleadings and evidence in the light most favorable to the opponent of the motion; and if the Court has any doubt whether or not a genuine issue of material fact exists, it must overrule the motion. *Poore v. Magnavox Co. of Tenn.*, 666 S.W.2d 48, 49 (Tenn.1984); *Evco Corp. v. Ross*, 528 S.W. 2d 20 (Tenn.1975); *Stone v. Hinds*, 541 S.W.2d 598, 600 (Tenn.App.1976); *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981), states the following:

> Generally, summary judgments are not appropriate in negligence actions.... The procedure was designated to provide a quick, inexpensive means of concluding cases, on issues as to which there is no dispute regarding material facts, but was in no wise designed for the trial of factual issues. It can be granted only when the pleadings, stipulations, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.... In negligence cases, issues of proximate cause, intervening cause and contributory negligence are peculiarly issues for the trier of fact, not the court to determine. Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon them....

The facts of this case may be found in certain affidavits submitted to the Trial Court, and in the administrative record of the hearing before the Alcoholic Beverage Commission. One basis of plaintiffs' Motion for Summary Judgment on the issue of liability was that "the defendants" were found guilty of violating T.C.A. § 57–4–203 by the Administrative Law Judge of the Tennessee Alcoholic Beverage Control Commission in that "defendants sold intoxicating beverages to an obviously and visibly intoxicated business patron." In his brief, plaintiff has argued vigorously that such a finding makes the defendants guilty of negligence per se. Though the actual order of the Administrative Law Judge is not in the record, no question has been raised as to such a finding in any of defendants' briefs or in oral argument. The only question raised as to such a finding is the binding effect of same on the defendants. We therefore treat such a finding as undisputed.

There is a wide disparity in the witnesses' testimony in the administrative hearing and between the affidavits of experts, and since the plaintiffs are entitled on appeal to every favorable inference from this testimony, we will examine the facts from the record in that light.

Plaintiffs brought this action for monetary damages pursuant to the Tennessee Wrongful Death Act, T.C.A. § 20–5–106,

for common law negligence and reckless and callous disregard to the rights and safety of the deceased, Robert E. Kirksey, Jr., age 27.

On February 17, 1985, Kirksey entered the East End Grill at 5343 Knight Arnold Road, Memphis, Tennessee, at approximately 10:30 p.m. to meet several of his friends. Before that time, he had consumed about a quarter of a bottle of champagne, some Valium, and had shared a marijuana cigarette with a friend of his, Charlene Adams. Additionally, Kirksey had consumed three cans of beer shortly before his arrival at the East End Grill. At the latter establishment, he met a person by the name of Denny Hanna, one of the defendants. Kirksey purchased from the East End Grill a drink known as a "Zombie." Hanna bet Kirksey that Kirksey could not drink ten Zombies in one hour, and Kirksey agreed to the bet. One condition of the bet was that Kirksey had to go to the bar to obtain the drinks. A waitress, Sarita Bolton, nickname, "Sam," brought Kirksey the first drink, and after he had consumed same, the bettor, Hanna, told Kirksey that that consumption would not count on the bet because he had not gone to the bar. Kirksey then went to the bar to obtain the drinks, "all the way up until the ninth drink."

Kirksey drank the fourth drink of the bet and went to the restroom to vomit. He vomited again after the fifth and sixth drinks, as well as after the seventh and eighth drinks. Kirksey was staggering a little after the fourth drink, Rudy McDaniel went with him to the restroom. Charlene Adams stated, in her opinion, Kirksey was "obviously very intoxicated" the second time he went to the restroom. Kirksey had "trouble making it to the restroom" and had to walk "all the way down the length of the bar" with the assistance of Rudy McDaniel. When Kirksey vomited after the eighth drink, his friend, Rudy McDaniel, had to assist him in his balance "where he wouldn't fall over the urinal." After the eighth drink, Kirksey had gone to the bar, and was served number nine "with no question." The bartender would not serve Kirksey the tenth drink. The bettor, Han-

na, bought the last drink for Kirksey and Kirksey finished it. Kirksey then went to the restroom in the East End Grill to vomit, and after returning to the table, fell out of his chair, and hit his head on the corner of the table. Chuck Cole, a friend of Kirksey's, who was at the establishment, got permission from the management to use an emergency exit door, and Kirksey was taken to an apartment owned by Ricky Buchanan. Kirksey had to be assisted to the apartment because of his extreme intoxication. Kirksey died at the apartment on February 18, 1985, between the hours of 7:30 and 8:30 a.m. of acute ethaholism.

The waitress, Sarita Bolton, and James Hooper, one of the owner/bartenders that evening, denied that they knew the number of drinks that Kirksey had while at the East End Grill.

Dennis Flanagan also testified he did not know how many Zombies Kirksey had, but he knew that Kirksey had paid for nine Zombies on Kirksey's American Express credit card. James Hooper testified that he did not know any other persons in the bar other than Hanna and Kirksey who drank Zombies that night. Rudy McDaniel testified that he went back to the East End Grill after Kirksey's death and talked to James Hooper. McDaniel had just received a "summons or subpoena" from the State of Tennessee regarding the charge of revocation of the East End Grill's license. McDaniel told Hooper that he was unemployed and Hooper made a statement which McDaniel summarized as follows:

Rudy, we'll do anything to keep our license. If it's a job, we can give you a job. If it's money, we can work out that problem, too.

McDaniel did not respond to these statements. Hooper, at the ABC hearing, denied making such remarks to McDaniel.

The Complaint alleges that the defendants, Sarita Bolton, the waitress; Dennis Flanagan, and James Hooper, the bartenders, along with the bettor, Denny Hanna, engaged in a scheme to make the "Zombie" drinks stronger, in order that Kirksey would become intoxicated more quickly.

Debbie Lynn Hardison, who was at the table with Kirksey, testified that Sarita Bolton knew of the bet between Hanna and Kirksey because Hanna discussed some of its terms with her. Curtis (Rudy) McDaniel, who was also at the table, testified that "everyone" knew that the bet was going on. The waitress, Sarita Bolton, nicknamed Sam, testified that she was at the Kirksey table at least every ten minutes and maybe more. Cole and McDaniel, witnesses at Kirksey's table, also testified that Sam, the waitress, was at their table many times during the one hour that the bet was going on. Charlene Adams, who, likewise, was sitting at the Kirksey table on the night in question, testified that the bartenders would have had a clear view of the incidents at Kirksey's table because of the physical setup of the East End Grill. Other witnesses at the Kirksey table, as well as the bartender, Hooper, likewise, confirmed that the bartenders would have had a view of the Kirksey table. McDaniel testified that that night Kirksey would get the drinks from the bar and drink them quickly, and that "everyone was cheering him on to a certain degree." McDaniel reasoned that the bartender, James Hooper, knew of the bet in the following manner:

> [W]e were up there [at the bar with Hooper] prior to that time [after Kirksey had been cut off from the drinks] discussing the potency of the drinks, so that would be my reasoning of—beside the distance and the commotion that was going on. I would say, yea, he was aware of it.

Dennis Flanagan, a bartender, was also present behind the bar the night that Kirksey drank the Zombies, and Flanagan served Kirksey and kept a tab on the drinks.

Charles Cole, nicknamed Chuck, testified that there was a controversy about the strength of the Zombie drinks being served to Kirksey, and that these drinks were perhaps "mixed stronger than they should be." Debbie Hardison told the bartender that the second drink of the bet was a "double because it tasted real strong." Debbie further testified that, when she walked to the bar to complain of the Zombie being a double, she was accompanied to the bar by the bettor, Hanna, and Kirksey. Rudy McDaniel, who, likewise, went to the bar with Hardison, the bettor, Hanna, and Kirksey, more or less confirmed this testimony and stated that "everyone was kind of cautious at that time still whether or not the remaining parts of the drinks were still strong." James Hooper, the manager/owner/bartender, likewise testified that Hanna had asked him to make the drinks "extra strong," but denied that he did so. Hanna denied any such conversation with Hooper.

As previously stated, Kirksey consumed at the East End Grill, on the evening of February 17, 1985, eleven Zombies, including the first one, which Hanna stated did not count on the bet. On May 9, 1986, the day the motion for summary judgment was heard, the Plaintiff filed in the Circuit Court action below, an Affidavit of Michael A. Todd, M.D., a Board certified pathologist, who had reviewed the toxicology studies and the autopsy report regarding Kirksey. Dr. Todd, in his Affidavit, made the following observations:

> Robert Kirksey, Jr., had a minimum of 9.9 oz. . . . . of alcohol in his body at 12:10 a.m., February 18, 1985, when he left the East End Bar and Grill, which is the equivalent of 21.06 oz. of liquor at an average of 94 proof. In addition thereto, the percent of alcohol in his blood would have been .410%. Assuming one Zombie drink contains 1¼ oz. of liquor as testified by Dennis Flanagan, it is my opinion that Mr. Kirksey had to have at least 16.85 Zombie drinks to have reached this level of intoxication. I did not take into consideration the fact that Mr. Kirksey vomited four times while consuming this amount of alcohol. This level of alcohol in the body is consistent with facts that Mr. Kirksey ceased consumption of alcohol at 12:10 a.m. on February 18, 1985, and died between the hours of 7:30 a.m. and 8:30 a.m. the same day, having a blood alcohol content of .30% as established by the medical examiner's report.

Dr. David T. Stafford, M.D., testified before the Alcoholic Beverage Commission of the State of Tennessee, that any alcohol that Kirksey had consumed that was "regurgitated and expelled would not be there to be absorbed."

The affidavit of Patrick Edward Besant–Matthews, M.D. filed on behalf of defendants states his professional opinion to be that the facts were consistent with a finding that the deceased drank ten "Zombies" in a one hour period on or about January 17, 1985. (sic)

The sale of alcoholic beverages by any licensee or other person who is visibly intoxicated is a violation of T.C.A. § 57–4–203(c) which is a penal statute and such act makes the seller guilty of negligence per se, *Brookins, supra.* The purpose of such statutes is to protect the members of the general public, as well as the class of persons designated in the statute. 48 C.J.S., *Intoxicating Liquors*, Section 257, page 766.

The decedent Kirksey is within that class of persons protected by the statute. Where injury results such negligence per se must be a proximate cause of said injury to be actionable.

■ Though the furnishing of intoxicants in violation of the statute may be the proximate cause of an injury resulting from intoxication, yet even if that is the proximate cause, the plaintiff's action is barred nonetheless if he is guilty of proximate contributory negligence. Voluntary intoxication does not relieve one of his own negligence. *Highland Dodge, Inc. v. Trent*, 223 Tenn. 387, 445 S.W.2d 903 (1969), *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32 (1925).

*Brookins, supra,* involved a minor plaintiff injured while a passenger in a vehicle driven by an intoxicated person suing defendants alleged to have sold intoxicating beverages to the minor, thus diminishing his capacity to exercise care for his own safety in riding with the intoxicated driver. The minor plaintiff had actively contributed to the intoxication of the adult driver by illegally procuring the intoxicating beverages and by sharing them with the driver to the point of mutual intoxication. Justice Cooper speaking for a unanimous Court stated:

We agree with the Court of Appeals that a person, who has the capacity and judgment to act responsibly in his own behalf cannot recover damages where he actively contributes to the intoxication of another and the intoxication is the proximate cause of the injury that is the subject of the legal action....

Where one cannot recover damages when he actively contributes to the intoxication of another and that intoxication is the proximate cause of his injury, it would logically follow that one cannot recover damages when he actively contributes to his own intoxication, which is the proximate cause of his injury.

We conclude therefore that if the bartender is guilty of only a letter violation of the statute and Kirksey calculatedly and deliberately drank ten "exotic drinks of high alcoholic content" within one hour then all reasonable minds must agree that such facts mandate a finding of contributory negligence on the part of Kirksey; thus barring this action.

Thus, the following statements in the complaint *standing alone* would entitle the defendants to a judgment of dismissal for failure to state a claim upon which relief can be granted:

8. Shortly after arriving at the bar, Kirksey purchased a drink known as a "Zombie", from a waitress employed by the bar. A "Zombie" is an exotic drink of high alcoholic content containing numerous varieties of rum, alcohol and fruit juices. It is known in the bartending industry that the sale of such exotic "Zombie" drinks is uncommon with very few being sold in a normal evenings business.

9. Thereafter, Kirksey met Defendant, Denny W. Hanna, another customer. Kirksey and Hanna engaged in conversation with the rest of Kirksey's friends for a short while, during which the subject of the strength of a Zombie arose. Hanna bet Kirksey $100.00 that Kirksey

could not drink ten (10) Zombies within one (1) hour. Both Defendant and Kirksey understood and accepted the terms of the bet. . . .

However, as previously stated, the plaintiffs allege that the defendants were guilty of willful and wanton conduct in their actions toward Kirksey.

Contributory negligence under our law is not a defense where the conduct of the defendant is willful, wanton or reckless. 19 Tenn.Juris. *Negligence,* Section 19 and cases cited therein. On the other hand, if plaintiff is guilty of willful, wanton or reckless misconduct that conduct is a defense to defendant's similar misconduct.

We have found no Tennessee cases involving the willful and wanton conduct of sellers of alcoholic beverages toward consumers, however, other states have dealt with the legal implications. The case of *Nally v. Blandford,* 291 S.W.2d 832 (Ky. App.1956) presents a similar question to the instant appeal. The Complaint alleged that the deceased had made a bet that he could consume a stated amount of whiskey. It was further alleged that the defendant knew of the bet, and that the deceased could not be safely trusted with the alcohol. The Complaint also claimed that the sale of alcohol to the deceased was in violation of a state statute prohibiting sales to visibly intoxicated persons, and that such sale by the defendant was for the purpose of injuring the deceased. In reversing the lower Court's dismissal of the Complaint, the Court held that contributory negligence would not bar the action, since the plaintiffs had alleged an intentional wrongful act on the defendant's part and not a negligent one.

The plaintiffs specifically allege that the defendants knew a bet was taking place and were aware of the terms thereof. Further, the defendant, Hanna, is alleged to have conspired with the other defendants to make the drinks especially strong with the knowledge that Kirksey would be endangered thereby.

When the pleadings and evidence are viewed in the light most favorable to the plaintiff we are of the opinion that genuine issues of fact are presented as to willful and wanton conduct on the part of defendants regarding Kirksey.

The defendants deny that the Zombie drinks were "doubled" or made stronger than normal. However, the affidavit of Michael A. Todd, M.D. concludes that Kirksey would have to have had 16.85 Zombies instead of the 11 that he had in order to have the blood alcohol concentration he had when he left the East End Grill at 12:10 a.m. on February 18, 1985. This affidavit, as well as other evidence about the strength of the drinks and the statements made about Hanna's request that the drinks be made strong create a genuine factual dispute on the plaintiffs' allegation.

The defendant Hanna contends that he simply made a bet in a social setting, which bet was understood and accepted by Kirksey and under such circumstances there is no cause of action against him. Nothing else appearing, the stated circumstances would exonerate Hanna.

The complaint has the following allegation:

11. At the time of the making of the bet, Defendant Hanna and the Defendant bartenders, Flanagan and Hooper, and Defendant bar's waitress, Sarita Bolton, engaged in a scheme to trick Kirksey by doubling and serving Kirksey extra strong drinks while Kirksey was thinking that he was receiving a standard Zombie drink and not a "double" Zombie. Kirksey was not aware at anytime of the conspiracy, trick or scheme engaged in by these Defendants to get Kirksey intoxicated more quickly by serving him the extra strong double Zombies.

A civil conspiracy is simply a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 347 (1948). The essence of a civil conspiracy is a concert or combination to defraud or cause other injury to person or property, which results in damage to the person or property of the plain-

tiff. *Black's Law Dictionary*, 5th Ed. 1979. The requisite elements of the cause of action are common design, concert of action, and an overt act. *Koehler v. Cummings*, 380 F.Supp. 1294 (M.D.Tenn.1974).

When the evidence is viewed most favorably to the plaintiffs there is a fact question whether the defendant Hanna conspired with the defendant bartenders and they conspired with him to furnish extra strong drinks to the deceased and whether the act or acts of these persons was willful and wanton negligence and the proximate cause of the death. Also, a fact question is presented from the evidence as to whether Kirksey knew the drinks were stronger than usual and thus assumed the risk, i.e., he understood the specific danger involved and was capable of appreciation of that danger, and thus was guilty himself of willful and wanton negligence. Viewed in the light most favorable to the plaintiffs, the deceased had eleven Zombie drinks yet consumed the alcoholic content of 16.85.

The defendants contend that plaintiffs cannot rely upon the affidavit of Michael A. Todd, M.D. since the plaintiffs did not file Dr. Todd's affidavit until the day of the hearing on the defendants' motion to dismiss or for summary judgment, and that on its face, Dr. Todd's affidavit is not probative of any issue since Dr. Todd did not take into account the fact that Robert Kirksey had consumed a "significant" amount of alcohol prior to his arrival at the East End Grill where he drank at least eleven more Zombies. We find no merit to this contention.

The record does not reflect that objection was made to the admission and filing of Dr. Todd's affidavit on the basis of untimeliness. The defendants do not contend in their brief that such objection was made. Questions which are not raised in the trial court will not be considered on appeal. *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn.1983). One must make an objection at the trial level to improperly admitted evidence in order to raise any error on appeal. 2 Tenn.Juris. *Appeal and Error*, Section 36, page 128, *Baxter v. Vanden-*

*heovel*, 686 S.W.2d 908, 911 (Tenn.App. 1984). It is not contended that Kirksey was intoxicated when he arrived at the East End Grill. Dr. Todd stated in his affidavit that he had reviewed the complaint originally filed as well as the testimony from the Alcohol Beverage Commission, the medical examiner's report, the toxicological studies from the University of Tennessee Laboratory System and the complete autopsy report, the statements of Dr. David Stafford, Wesley Smith, Debbie Lynn Hardison and Dennis Flanagan. He states that he did not take into consideration the fact that Kirksey vomited four times while consuming the alcohol at the East End Grill.

■ The plaintiffs have cited and relied upon *Purcell Enterprises, Inc. v. State of Tennessee*, 631 S.W.2d 401 (Tenn.App.1981) for the proposition that the "defendants" are "estopped" by the findings of the Alcoholic Beverage Commission. It is conceded, however, by the plaintiffs that the only parties to the proceeding were the ABC and the defendant Overton Pub, Inc. d/b/a East End Grill. The defendants, Dennis Flanagan, James Mark Hooper and Denny W. Hanna, were not parties to the administrative proceedings, nor were the plaintiffs in the instant action. The doctrines of collateral estoppel and *res judicata* are inapplicable to the instant case except as to the defendant Overton Pub, Inc. d/b/a East End Grill as to the issue there decided. *See, Clements v. Pearson*, 209 Tenn. 223, 352 S.W.2d 236 (1962), *Fourakre v. Perry*, 667 S.W.2d 483 (Tenn.App.1984). Certainly Hanna had no opportunity to contest or litigate any issue in the hearing.

Aside from the fact that the foregoing named defendants in the instant case were not parties to the administrative hearing, the issue of willful, wanton or reckless conduct was not necessarily an issue nor decided against any party in the administrative hearing. The finding of the Alcoholic Beverage Commission that the East End Grill did violate T.C.A. § 57-4-203(c) by operation of law makes the said defend-

ant guilty of negligence per se, however, it is not a finding that by operation of law makes the said defendant guilty of willful, wanton or gross negligence.

The Court being of the opinion that there are genuine issues of material fact as stated, judgment of the trial court is reversed and the case is remanded for a jury trial under circumstances not inconsistent with this opinion.

The costs are taxed against the defendants for which let execution issue if necessary.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.