**Robert KIRKSEY, Sr., and Neva Kirksey, Husband and Wife and Natural Parents and Next of Kin of Robert E. Kirksey, Jr., Deceased, Plaintiffs–Appellants,**

v.

**OVERTON PUB, INC., d/b/a East End Grill, Dennis Flanagan, James Mark Hooper, and Denny W. Hanna, Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 1, 1990.

Application for Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Eugene C. Gaerig, Memphis and Ronald L. Taylor, Southaven, Miss., for plaintiffs-appellants.

James R. Garts, Jr., Harris, Shelton, Dunlap and Cobb, Robert L. Sabbatini, Shuttleworth, Smith and Webb, and W. Michael Richards, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendants-appellees, Overton Pub, Inc. d/b/a East End Grill, Dennis Flanagan and James Mark Hooper.

J. Kimbrough Johnson, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, for defendant-appellee, Denny W. Hanna.

SUMMERS, Judge (Retired).

This appeal and review is the direct result of an incident which occurred on February 17, 1985, in the City of Memphis at the East End Grill. The happening culminated in the death of Robert E. Kirksey, Jr. The plaintiffs, parents of the deceased, filed this lawsuit for the wrongful death of their 27–year–old son alleging common law negligence and other statutory violations. The defendants, Overton Pubs, Inc., d/b/a East End Grill, Dennis Flanagan, James Mark Hooper and Denny W. Hanna, were originally granted a motion for summary judgment, but that judgment was reversed by this Court and the case remanded for a jury trial on its merits. *See Kirksey v. Overton Pub, Inc.*, 739 S.W.2d 230 (Tenn. App.1987).

As conceded by the litigants, most of the facts in this case can be found in *Kirksey, supra.* They are as follows:

On February 17, 1985, Kirksey entered the East End Grill at 5343 Knight Arnold Road, Memphis, Tennessee, at approximately 10:30 p.m. to meet several of his friends. Before that time, he had consumed about a quarter of a bottle of champagne, some Valium, and had shared a marijuana cigarette with a friend of his, Charlene Adams. Additionally, Kirksey had consumed three cans of beer shortly before his arrival at the East End Grill. At the latter establishment, he met a person by the name of Denny Hanna, one of the defendants. Kirksey purchased from the East End Grill a drink known as a "Zombie." Hanna bet Kirksey that Kirksey could not drink ten Zombies in one hour, and Kirksey agreed to the bet. One condition of the bet was that Kirksey had to go to the bar to obtain the drinks. A waitress, Sarita Bolton, nickname, "Sam," brought Kirksey the first drink, and after he had consumed same, the bettor, Hanna, told Kirksey that that consumption would not count on the bet because he had not gone to the bar. Kirksey then went to the bar to obtain the drinks, "all the way up until the ninth drink."

Kirksey drank the fourth drink of the bet and went to the restroom to vomit. He vomited again after the fifth and sixth drinks, as well as after the seventh and eighth drinks. Kirksey was staggering a little after the fourth drink, Rudy McDaniel went with him to the restroom. Charlene Adams stated, in her opinion, Kirksey was "obviously very intoxicated" the second time he went to the restroom. Kirksey had "trouble making it to the restroom" and had to walk "all the way down the length of the bar" with the assistance of Rudy McDaniel. When Kirksey vomited after the eighth drink, his friend, Rudy McDaniel, had to assist him in his balance "where he wouldn't

fall over the urinal." After the eighth drink, Kirksey had gone to the bar, and was served number nine "with no question." The bartender would not serve Kirksey the tenth drink. The bettor, Hanna, bought the last drink for Kirksey and Kirksey finished it. Kirksey then went to the restroom in the East End Grill to vomit, and after returning to the table, fell out of his chair, and hit his head on the corner of the table. Chuck Cole, a friend of Kirksey's, who was at the establishment, got permission from the management to use an emergency exit door, and Kirksey was taken to an apartment owned by Ricky Buchanan. Kirksey had to be assisted to the apartment because of his extreme intoxication. Kirksey died at the apartment on February 18, 1985, between the hours of 7:30 and 8:30 a.m. of acute [ethanol poisoning].

*Kirksey, supra* at 233.

After remand, a jury trial was held on the merits. The trial resulted in a verdict in favor of all defendants. Motions for a judgment notwithstanding the verdict and for a new trial were made by the plaintiffs. They were denied by the trial court. The plaintiffs then perfected their appeal and submitted the following issues for this Court to review:

1. Did the trial court err in failing to grant a directed verdict on the plaintiffs' claim that the defendants served the deceased extra strong or "doubled" drinks without his knowledge and that the defendants conspired to do so?

2. Did the trial court err in failing to grant a directed verdict on plaintiffs' claim that the defendants Overton Pub, Inc., d/b/a East End Grill, Dennis Flanagan and James Hooper failed to render medical aid as set forth in the amended complaint?

3. Did the trial court err in granting the defendants' motion to strike plaintiffs' claim under the Consumer Protection Act, T.C.A. § 47-18-101, et seq.?

4. Did the trial court err in granting the defendants' motion to strike plaintiffs' claim for prejudgment interest, T.C.A. § 47-14-123?

5. Did the trial court err in denying the plaintiffs' motion *in limine* to exclude evidence of the deceased's use and abuse of alcohol and drugs, and in allowing the defendants to introduce evidence of the deceased's use and abuse of alcohol and drugs in the trial of this cause?

6. Did the trial court err in excluding evidence of certain recipe books of the defendant, Overton Pub, Inc., d/b/a East End Grill?

7. Did the trial court err in granting the defendants' motion *in limine* to exclude the testimony of the plaintiffs' expert witnesses, James Peters and Harold Shumacher?

8. Did the trial court err in declaring Chuck Cole a hostile witness and allowing the defendants to cross-examine him?

9. Did the trial court err in holding that any violation of T.C.A. § 57-4-203 would not be applicable to the defendant Dennis Hanna?

10. Did the trial court err in failing to charge the plaintiffs' Special Request No. 12, which would have required the defendant, Dennis Hanna, to prevent further harm to the deceased if Hanna's action had caused the deceased harm?

11. Did the trial court err in charging the jury that the defendant, Dennis Hanna, could not be liable to the plaintiffs if he did not enter into a conspiracy with one or more of the other defendants?

12. Did the trial court err in its charge concerning the defendants' duty to render medical aid, and by failing to charge the plaintiffs' Substituted Special Request No. 6 which addresses the said duty?

13. Did the trial court err in instructing the jury that the defense of independent intervening cause could be applicable in this case?

14. Did the trial court err in failing to charge the plaintiffs' Special Request No. 16 which instructed the jury to disregard the deceased's use of marijuana?

15. Was the conduct of the trial judge partial to the defendants, and did his

actions during the trial deny the plaintiffs a fair and impartial trial by jury as guaranteed by the Constitution of the State of Tennessee?

16. Did the trial court err in failing to require the defendants to produce the statements of witnesses Sarita Bolton and Sandra Louallen?

17. Did the trial court err in charging the jury that contributory negligence and assumption of risk were proper defenses to plaintiffs' allegations that the defendants violated T.C.A. § 57–4–203?

■ The plaintiffs contend in their first issue that the trial court should have directed a verdict on the claim that the defendants served Kirksey extra strong drinks without his knowledge and that the defendants conspired to do so. The law in our state is very clear on this subject. In order for a trial court to direct a verdict, it must take the strongest legitimate view of the evidence in the opponent's favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed except where a reasonable mind could draw but one conclusion. Neither the trial judge nor the reviewing court should weigh the preponderance of the evidence when passing on a motion for directed verdict. *See Holmes v. Wilson*, 551 S.W.2d 682 (Tenn. 1977).

Plaintiffs insist that the unimpeached, uncontradicted testimony of Dr. Michael Todd indicates that Kirksey was given the equivalent in alcohol of 17.2 Zombies and not the 11 Zombies served to Kirksey. Dr. Jerry Thomas Francisco, a pathologist with the Shelby County Medical Examiner, testified that it would be very difficult to calculate how much alcohol Kirksey may have had to drink. Dr. Francisco further testified that based on an estimate of the alcohol present, Kirksey's weight, and other factors, that Kirksey's blood alcohol and urine alcohol levels would be consistent with the drinking of 10 Zombies.

We hold that there is material evidence upon which the jury could have made the factual determination that the defendants did not conspire to serve Kirksey extra strong Zombies. We find no error with the trial court's failure to direct a verdict on this contention. The first issue is therefore overruled.

■ The plaintiffs contend in their second issue that the trial court erred in failing to grant a directed verdict on their claim that defendants, Overton Pub, Inc., Dennis Flanagan and James Hooper failed to render medical aid as set forth in the amended complaint. The plaintiffs admit that the defendants could rely upon competent friends to obtain medical assistance, but urge that there is no reasonable basis for the trier of fact to conclude that Kirksey was turned over to competent friends upon whom the defendants could depend to obtain medical assistance for the deceased.

The record shows clearly that Chuck Cole and Rudy McDaniel, Kirksey's friends, removed him from the bar and drove him to an apartment occupied by Ricky Buchanan. The friends placed Kirksey on a couch, turned him on his side and propped some blankets and towels behind him so that he wouldn't roll over and strangle on his own vomit. They placed a cardboard box on the floor next to Kirksey to catch any vomit. McDaniel testified that he had drunk only two or three beers before going to the bar and had about two or three beers at the bar. McDaniel further stated that he stayed with Kirksey about 15 or 20 minutes to make sure that he was "okay" and returned to the bar to pay his bill. After returning to the apartment Kirksey's condition was checked on. He was found to be snoring and sweating slightly. McDaniel testified that they periodically checked Kirksey's pulse and wiped sweat from his brow until about 4:00 a.m. It is also apparent that Kirksey's friends were acting in a competent manner when McDaniel took Kirksey's car keys to prevent him from driving his automobile when he first entered into the bet with Hanna. We hold that there was ample material evidence from which the finder of facts could find that Kirksey was turned over to apparent competent persons. We find no

error in the trial court's failure to grant a directed verdict on this issue.

It follows that the issue is overruled.

■ The third issue states that the trial court erred in granting defendant's motion to strike plaintiffs' claim under the Consumer Protection Act, T.C.A. § 47–18–101, *et seq.* The plaintiffs insist that defendants' motion to strike came too late and was procedurally inappropriate. It is also the plaintiffs' contention that the defendants misrepresented the strength of the drinks served the deceased and they claim that this allegation falls within the ambit of T.C.A. § 47–18–104(b)(7) and (26) which provides:

> (b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are hereby declared to be unlawful and in violation of this part: ...
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; ...
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (26) Engaging in any other act or practice which is deceptive to the consumer.

The statutes further provide that a private right of action under the Consumer Protection Act must be brought in accordance with T.C.A. § 47–18–109 (1988). That section states:

> **Private right of action—Damages—Notice to division.**—(a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually, but not in a representative capacity, to recover actual damages.

There is no question that an action can be brought when a person suffers an ascertainable loss of money or property or any other article, commodity, or thing of value wherever situated. Plaintiffs assert that Kirksey's life was "a thing of value" under T.C.A. § 47–18–109 and thus a wrongful death claim would lie for a violation thereof. Plaintiffs admit however, that there was no claim concerning whether or not Kirksey was overcharged for the Zombies but assert that the defendant bartenders exceeded the alcoholic content of the Zombies as they were allegedly represented to Kirksey.

Our interpretation of T.C.A. § 47–18–109 is that a person would be allowed to bring an action for loss of money or property as a result of unfair or deceptive acts. We must hold that the General Assembly intended for the Consumer Protection Act to be used by a person claiming damages for an ascertainable loss of money or property due to an unfair or deceptive act or practice and not in a wrongful death action.

Rule 12.06 of the Tennessee Rules of Civil Procedure allows the trial court to strike certain pleadings upon its own initiative.

Therefore, we hold that the trial court was correct in granting the defendants' motion to strike plaintiffs' claim under the Consumer Protection Act.

The third issue is overruled.

■ The fourth issue insists that the trial court erred in granting the defendants' motion to strike plaintiffs' claim for prejudgment interest.

T.C.A. § 47–14–123 allows the court or jury to add prejudgment interest as an element of, or in the nature of, damages. We hold that the granting of pre-judgment interest is a matter that is well within the bosom of the court and is discretionary. The trial court did not abuse its discretion. Furthermore, this issue is now moot in that a jury verdict was rendered in favor of the defendants.

The fourth issue is overruled.

■ The plaintiffs in their fifth issue contend that the trial court erred in denying the plaintiffs' motion *in limine* to exclude evidence of Kirksey's use and abuse

of alcohol and drugs and also in allowing the defendants to introduce evidence of Kirksey's use and abuse of alcohol and drugs at the trial. Plaintiffs assert that any evidence concerning Kirksey's use of drugs and/or alcohol was not relevant to this case, and any relevance it may have had was far outweighed by its prejudicial effect and must be excluded.

The evidence at trial showed clearly that Kirksey had regularly participated in games or contests involving the consumption of alcoholic beverages and had won the beer chugging contest at an apartment complex in Memphis for three consecutive years prior to his death. Also, Kirksey had attended the St. Patrick's Day "Pub Crawl" prior to his death during which he rapidly consumed the entire contents of a quart or fifth of Schnapps, and then "passed out." Kirksey, in one drinking game, consumed ten glasses of beer in an hour and in another consumed twenty glasses of beer in two hours and then drove his automobile. Other testimony revealed that Kirksey frequently used marijuana and Valium and other illegal drugs, including LSD, amphetamines, and cocaine. At the time of his death he was suffering from a fatty liver condition which is consistent with alcohol abuse.

■ We hold that the law in Tennessee is clear in that a deceased's personal habits as to sobriety are admissible in a wrongful death action. *See Nashville & Chattanooga R. Co. v. Prince*, 49 Tenn. 580, 587 (1871).

Although the admission of the evidence as to Kirksey's use and abuse of drugs was prejudicial to the plaintiffs' case, it was also most relevant and we cannot say that its probative value was substantially outweighed by the danger of unfair prejudice. Thus, this issue is without merit.

■ In their next issue the plaintiffs complain that the trial court erred in excluding evidence of certain mixed drink recipe books of the defendant, Overton Pub., Inc. Plaintiffs insist that they were prohibited from questioning Dick Broyles, one of the shareholders of the establishment, as to the use of Trader Vic's manual and

Friday's bar guide. The record shows that these books were used at the East End Grill as a reference guide and not for exact proportions. However, plaintiffs assert that these books could have been used to make the drinks at East End Grill and that the books were relevant to show any discrepancy between the strength of the drinks in the book and those actually served. The two defendant bartenders testified that if a bartender did not know how to mix a certain drink, then the bartender could refer to either the Trader Vic's or Friday's bar guide, but only as to ingredients and not the amount of alcohol. Both testified that they were familiar with the recipe for making a Zombie and that they did not refer to the foregoing manuals.

■ Generally, the determination of the exclusion of the admissibility of cumulative testimony is within the discretion of the trial judge, and any error in restricting further testimony in this regard is harmless. *See Austin v. City of Memphis*, 684 S.W.2d 624, 631 (Tenn.App.1984).

Therefore, the sixth issue has no merit.

■ In the next issue the plaintiffs contend that the trial court erred in granting the defendants' motion *in limine* to exclude the testimony of the plaintiffs' expert witnesses, James E. Peters and Harold Schumacher. Peters and Schumacher were to be used to show that the actions of the bartenders did not measure up to the customs and standards of care recognized in the industry.

■ Generally, a trial judge has wide discretion in passing upon the admissibility of expert testimony and whether such testimony is necessary. *Shelby County v. Barden*, 527 S.W.2d 124, 131 (Tenn.1975). In *Casone v. State*, 193 Tenn. 303, 313, 246 S.W.2d 22, 26 (1952), it was held that expert testimony is necessary in cases where the subject under examination is one that requires the court and jury to have the aid of knowledge or experience that persons not specially skilled do not have and which cannot be obtained from ordinary witnesses. The subject of the expertise must be

one that would not be comprehensible to jurors without the aid of an expert witness. *See Lawrence County Bank v. Riddle*, 621 S.W.2d 735, 737 (Tenn.1981).

The trial court granted the defendants' motion *in limine* to exclude the testimony of these two witnesses because their opinion would be invading the province of the jury and would be addressing itself to the ultimate issue in the case.

The plaintiffs assert that the proposed testimony was appropriate to show that the actions of the bartenders fell below the customs and standards of reasonable care recognized in the industry. Specifically, the plaintiffs assert that with regard to the claim of failure to render medical aid, the proof was highly controverted and the issue was extremely close, and that the proposed testimony more than likely would have affected the results of the verdict.

The trial court instructed the jury, in part, that "it is for you ladies and gentlemen to say whether the acts of the defendant in following—in allowing friends to carry him away and care for him was reasonable under the circumstances."

In *Zachery v. Wheeler*, 511 F.Supp. 591 (E.D.Tenn.1981), the trial court excluded the testimony of an accident reconstruction expert on the grounds that such testimony was an unnecessary waste of time and that it would be a needless presentation of cumulative evidence since the jury was as capable of comprehending the primary facts and of drawing correct conclusions from them as the proposed experts. Quoting *Salem v. United Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), the court stated that:

> expert testimony not only is unnecessary but indeed may be excluded in the discretion of the trial judge "if all the primary facts can be accurately and intelligently described to the jury, and if they, as men [and women] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, ex-

perience, or observation in respect to the subject matter under investigation ...". 511 F.Supp. at 593.

Concerning the effects of alcohol, our Supreme Court in *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690 (Tenn.1984) stated, "Alcohol has been present and used in society during all recorded history and its characteristics and qualities have been fully explored and developed and are a part of the body of common knowledge." 664 S.W.2d at 693.

It has long been the rule in our state that lay witnesses may testify by opinion as to whether a person was intoxicated or drunk. *Daniels v. State*, 155 Tenn. 549, 296 S.W. 20 (1927).

Based on the foregoing we must say that the trial judge did not abuse his discretion in granting the defendants' motion to exclude the testimony of plaintiffs' experts. The jury was as capable of comprehending the primary facts and drawing conclusions from those facts as were the plaintiffs' alcohol management experts. Thus this issue is without merit.

 The plaintiffs next contend that the trial court erred in declaring Chuck Cole a hostile witness and allowing the defendants to cross-examine him. The plaintiffs assert that Cole was neither an indispensable witness nor did his testimony take the defendants by surprise and thus the defendants could neither impeach nor cross-examine him.

 The trial court is vested with wide discretion in deciding whether a witness is hostile and in permitting counsel to cross-examine his own witness. *Brown v. University Nursing Home, Inc.*, 496 S.W.2d 503, 508 (Tenn.App.1972). A party compelled to call an indispensable witness may impeach that witness. *King v. State*, 187 Tenn. 431, 435, 215 S.W.2d 813, 815 (1948). Our review of the record shows that during the plaintiffs' proof, the trial court allowed Chuck Cole to be called as a witness by either party due to his vacation plans. The trial court stated that he was unsure whether Cole was going to be a plaintiffs' or defendants' witness, and of-

fered to allow either party to call him. Attorney for the defendants Overton Pub, Inc. and the bartenders called Cole and began to question him. Shortly thereafter, plaintiffs' attorney objected on the grounds that Cole was being led and that the defendants were impeaching his testimony. The trial court requested that counsel for the respective parties approach the bench and out of the presence of the jury stated, "Well, I'm not too sure whose witness he is. He seems to be hostile to me and I might make him my witness."

It is clear from the record that Cole and Kirksey were friends and they had been together throughout the day and evening of February 17, 1985. Cole split a six-pack of beer with Kirksey on that day just prior to going to the East End Grill. Cole was also one of the friends who took Kirksey to the apartment where he later died. The record also shows that Cole was somewhat evasive in that his answers were inconsistent with previous statements given by deposition concerning this matter. Based on the record before this Court, we cannot say that the trial court abused its discretion by allowing the defendants to cross-examine and impeach Cole. Thus this issue is without merit.

■ On the next issue that confronts us the plaintiffs contend that the trial court erred in holding that any violation of T.C.A. § 57-4-203 (1989) would not be applicable to the defendant, Dennis Hanna. Plaintiffs insist that Hanna could be liable under T.C.A. § 57-4-203 because of the allegation that Hanna was a co-conspirator with the other defendants, whose acts were found to be a statutory violation. T.C.A. § 57-4-203 provides, in part, as follows:

(c) OTHER PROHIBITED SALES. (1) It is unlawful for any licensee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs.

It is the duty of the court to ascertain and give effect to the legislative intent when interpreting statutes. *Tidwell v. Collins,* 522 S.W.2d 674 (Tenn.1975). The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute without any forced or subtle construction to limit or extend the import of the language. *Worrall v. Kroger Co.,* 545 S.W.2d 736 (Tenn.1977); *City of Caryville v. Campbell County,* 660 S.W.2d 510 (Tenn. App.1983). After carefully reviewing Title 57 and T.C.A. § 57-4-203, we do not believe that the Legislature intended for these provisions to be applicable to Hanna. Although the defendants, Overton Pub, Inc., and the bartenders would be prohibited from selling or furnishing alcohol to a visibly intoxicated person, it does not necessarily follow that Hanna could be liable under T.C.A. § 57-4-203 for allegedly conspiring to serve Kirksey stronger drinks. Thus issue nine is without merit.

■ Next, plaintiffs contend that the trial court erred in failing to charge the plaintiffs' special request No. 12. Plaintiffs' special request No. 12 was based upon the *Restatement (2nd) of Torts* § 322 which provides:

**Duty to Aid Another Harmed by Actor's Conduct**

If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

The plaintiffs contend that they have an indisputable right to have every material issue of fact supported by testimony submitted to the jury with proper legal instructions, upon the hypothesis that such testimony shall be found to be true. Plaintiffs assert there is some proof in the record to show that defendant Hanna was present when Kirksey passed out. Plaintiffs submit in the alternative that even if Hanna were not present when Kirksey passed out, the jury could have determined that Kirk-

sey's helpless state and need could reasonably have been foreseen by Hanna.

Our review of the testimony of Rudy McDaniel shows that McDaniel and Chuck Cole took Kirksey to Buchanan's apartment after the drinking contest. McDaniel and Cole returned to the East End Grill. At trial McDaniel testified:

Well, Chuck Cole that was with me and also myself, we went back, and then by this time everybody was still there questioning how was Bob. We told them, and then a lot of people had to work the next day, so everybody left except Ronnie, myself, Debbie Lynn and Sandra, *and I think Hanna was still there.* (Emphasis added).

The aforementioned testimony of McDaniel is not proof that Hanna was present when Kirksey was taken from the bar but only indicates that Hanna may have been in the bar when McDaniel returned. Also, other witnesses testified that Hanna left the bar shortly after losing the bet and while Kirksey was still with his friends at the bar. In rejecting the plaintiffs' special request No. 12 the court stated:

I think that based on all the proof in this case that there was no duty on the part of Hanna to offer assistance. I'm not sure that your reference to the Restatement Section 322 applies to an individual such as Mr. Kirksey.

I think that it has more reference to someone who is visibly and obviously injured at the time.

In addition to that, I think that the prime responsibility in this case would be created by the relationship created between the innkeeper or the bartender, that is, and the customer. As a matter of fact, I don't believe that a customer would have the right to come up and intervene without permission from the innkeeper or the bar under the circumstances.

We find no error with the trial court's failure to give plaintiffs' special instruction No. 12 and this issue is without merit.

■ In issue number 11 the plaintiffs assert that the trial court erred in charging the jury that Hanna could not be held liable to the plaintiffs if he did not enter into a conspiracy with one or more of the other defendants.

We are of the opinion that this is a correct interpretation of the law as it is applied to the instant case.

The plaintiffs insist that the violation of T.C.A. § 57-4-203 applies to Hanna and that his liability could be predicated on his status as a co-conspirator with the bartenders, who could be liable for a statutory violation. This contention has no basis for merit.

The plaintiffs also argue that Hanna had a duty to render aid to Kirksey because "Hanna knew that Kirksey had drunk ten or eleven Zombies in an hour." First, Kirksey had not passed out or become incapacitated before Hanna vacated the bar. Second, there was no special relationship between Kirksey and Hanna giving rise to a duty. Third, and in any event, Kirksey's friends were present and were in a position to give him all necessary assistance.

The defendants' brief clearly explains Hanna's status after the drinking contest with Kirksey had terminated. They state in the brief:

It is unrealistic to assume that even if Hanna had been present when Kirksey passed out that Kirksey's friends would have turned him over to Hanna. The friends did just what friends would be expected to do, and just what Hanna would expect the friends to do, and that is take charge of Kirksey.

The court committed no error in its instructions and this issue has no merit.

■ Next, the plaintiffs assert that the trial court erred in its charge concerning the defendants' duty to render medical aid, and also failing to charge plaintiffs' Substituted Special Request No. 6. Plaintiffs assert that the duty placed upon the defendants by the trial court was not in accordance with case law or § 314A of the *Restatement (2nd) of Torts*. The court gave the following instruction on the defendants' duty to render aid:

Members of the jury, you are instructed that ordinarily a person is under no

duty to render aid to another unless there exists some special relationship between the parties which justifies the creation of such duty. The duty to render aid as created by such special relationship is the duty to use reasonable care under the circumstances. In this case, you are instructed that there was no such special relationship between Denny Hanna and Robert Kirksey, Jr.

A restaurant is under a duty to its customers to take reasonable action to give them first aid after it knows or has reason to know that they are ill or injured and to care for them until they can be cared for by others. A restaurant is not required to take action beyond that which is reasonable under the circumstances. A restaurant is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him or whose friends are present and apparently in a position to give him all the necessary assistance.

It is for you ladies and gentlemen to say whether the acts of the defendants in following—in allowing friends to carry him away and care for him was reasonable under the circumstances.

After reviewing plaintiffs' Substituted Special Request No. 6 we note that it contains numerous references concerning the duty to provide medical assistance for Kirksey. The court's instruction to the jury was a correct statement of the law for this case and the trial court properly instructed the jury on the duty of the defendants to render aid under the circumstances and in accordance with the rules set forth in *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn.1985), and the *Restatement (2nd) of Torts* § 314A. Thus, we find no error with the trial court's failure to give plaintiffs' Substituted Special Request No. 6.

Issue number 12 is respectfully overruled.

■ The plaintiffs next issue insists that the trial court erred in instructing the jury that the defense of independent, intervening cause could be applicable in this case. Plaintiffs assert that it was error to include an intervening cause charge in the jury instructions and that they should be granted a new trial. The plaintiffs further assert that by following the court's instructions the jury could have determined that Kirksey's friends were not apparently competent, but the friends' negligence could be a superseding cause which would relieve the defendants from their negligence in failing to turn Kirksey over to apparently competent persons. Also, the plaintiffs assert that the charge placed a burden upon them greater than that required by law; namely, to show a breach of duty and the foreseeability of the friends' negligence, and that this burden was prejudicial. The record shows that the trial court gave the following instructions concerning intervening cause:

Now, you have to consider whether or not that would be true in this case, and then there's the defense, I believe, of intervening cause, say, well, this might have been a proximate cause but something else happened down the line and that neither one of us could have anticipated, and for that reason, I would be relieved of my misconduct. These are the things that you have to look for in this case and throughout the instructions along with the forever pressing question of what is or is not proximate cause.

\* \* \* \* \* \*

If you find that a later new independent act or event intervenes in the sequence of events and itself causes injury to the deceased which would not reasonably have been foreseen by the defendant, then the defendant is relieved of liability for the injury or death. In order to break the chain of causation, the intervening act or event must not have been reasonably foreseeable by defendant and must not have been normal sequence of the situation created by him. Actions which are normal response to a situation created by another are not beyond reasonable anticipation and do not constitute an intervening cause.

The issue of proximate or intervening cause is generally for the jury to decide. *Evridge v. American Honda Motor Co.*,

685 S.W.2d 632 (Tenn.1985). In this case, the jury was instructed that they were to decide whether the acts of the defendants in allowing Kirksey's friends to carry him away and care for him were reasonable under the circumstances. The jury was instructed that the East End Grill was not required to give aid to Kirksey if he was in the hands of apparently competent persons who had taken charge of him, or if Kirksey's friends were present and apparently in a position to give Kirksey all the necessary assistance. Also, the trial court instructed the jury that actions which are a normal response to a situation created by another are not beyond reasonable anticipation and do not constitute an intervening cause. The jury could have determined that Kirksey's friends were not apparently competent or were not in a position to give Kirksey all the necessary assistance, and this was reasonably anticipated by the bartenders, thus there would be no intervening cause. Accordingly, we do not find the trial court's instruction to be erroneous. There is no merit in this issue.

■ Next the plaintiffs contend that the trial court erred in failing to charge the plaintiffs' special request no. 16 which instructed the jury to disregard the deceased's use of marijuana. This proposed charge, in essence, instructed the jury to disregard the testimony concerning Kirksey's use of marijuana and Valium on February 17, 1985, because it did not bring about Kirksey's death. As heretofore noted, we found no error with the trial court's failure to exclude this evidence and we find no error with the trial court's failure to instruct the jury to disregard Kirksey's use of drugs shortly before entering the bet to drink ten Zombies in one hour.

Issue number 14 is respectfully overruled.

■ On issue number 15 the plaintiffs contend that the conduct of the trial judge was partial to the defendants, and his action during the trial denied the plaintiffs a fair and impartial trial by a jury so guaranteed by the Constitution of the State of Tennessee. We have reviewed the record as cited by the plaintiffs concerning this issue and note that the plaintiffs failed to request that the trial judge declare a mistrial or to recuse itself. In *Spain v. Connolly*, 606 S.W.2d 540 (Tenn.App.1980), the court stated:

> Where a party has knowledge of facts which would justify a mistrial, it is his duty to bring such facts to the attention of the trial court immediately and he is not permitted to suppress such information until he has received an adverse decision. *Tinkle v. Dunivant*, 84 Tenn. (16 Lea) 503 (1886). That is to say, a party may not save an infirmity in the proceedings as an "ace in the hole" to be used in case of an adverse decision or suppressed in event of a favorable decision. A mistrial must be demanded as soon as its grounds are known, otherwise, it is waived.

606 S.W.2d at 543–44.

In *Boyd v. Hicks*, 774 S.W.2d 622 (Tenn. App.1989), the remedy for judicial prejudice is stated as follows:

> If the remarks were regarded by appellants as evidencing judicial prejudice, the remedy was a motion for recusal or mistrial, neither of which appears in the record.

774 S.W.2d at 627.

We also hold that the acts complained of do not exceed the boundaries of fair discipline by official disparagement of counsel nor did they prejudice the plaintiffs' case.

We do not find that the conduct of the trial judge favored the defendants or was in any way partial to them.

It results that this issue is also without merit.

■ The sixteenth issue is that the trial court erred in failing to require the defendants produce the statements of two witnesses of East End Grill, Sarita Bolton and Sandra Louallen. The trial court found these statements to be attorney-work products and denied plaintiffs' request that the defendants produce the statements.

Rule 26 of the Tennessee Rules of Civil Procedure states:

### 26.02 Discovery Scope and Limits

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

**(1) In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ....

\* \* \* \* \* \*

**(3) Trial Preparation: Materials.** Subject to the provisions of subdivision (4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* (Emphasis added).

The defendants insist that these statements were prepared in anticipation of litigation by the attorney for Overton Pub, Inc., and are therefore a work product under Rule 26. Mr. John Ball, a manager of East End Grill, testified that he called an attorney on February 19, 1985, and requested that he investigate the incident. Both witnesses were deposed and plaintiffs' attorney examined each extensively concerning the events at the East End Grill. Sandra Louallen testified that her testimony was not different from the statements she gave the attorneys.

The trial judge properly ruled that these statements were not discoverable and the defendants did not have to produce them.

No merit is found in this complaint.

■ In this last and final issue, the plaintiffs contend that the trial court erred in charging the jury that contributory negligence and assumption of the risk were proper defenses to plaintiffs' allegations that the defendants violated T.C.A. § 57–4–203. In *Kirksey v. Overton Pub, Inc.*, 739 S.W.2d 230 (Tenn.App.1987), this Court held that the defenses of contributory negligence and assumption of the risk would be applicable to a "letter" violation of T.C.A. § 57–4–203, which prohibits serving a visibly intoxicated person.

There quoting from *Kirksey, supra:*

We conclude therefore that if the bartender is guilty of only a letter violation of the statute and Kirksey calculatedly and deliberately drank ten "exotic drinks of high alcoholic content" within one hour then all reasonable minds must agree that such facts mandate a finding of contributory negligence on the part of Kirksey; thus barring this action.

The law in Tennessee is well settled that when negligence *per se* is established as a result of a violation of a statute, the defendant may raise the defenses of contributory negligence and assumption of the risk. *See Union Railway Company v. Jinks*, 55 Tenn.App. 491, 402 S.W.2d 495 (1965); *Adams v. Cumberland Inn Co.*, 117 Tenn. 470, 101 S.W. 428 (1906). There is no merit in this issue.

It follows that the judgment of the trial court is in all things affirmed. Costs of this appeal are taxed to the appellants for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.