IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 3, 2015

**STATE OF TENNESSEE v. TALMADGE HURT**

**Appeal from the Criminal Court for Shelby County**
**No. 0906562      James M. Lammey, Judge**

_____

**No. W2014-00513-CCA-R3-CD  -  Filed April 20, 2015**

_____

Defendant, Talmadge Hurt, was indicted by the Shelby County Grand Jury in September of 2009 for aggravated robbery and attempted aggravated robbery. He was tried with co-defendant Adrian Chaney for events that occurred at La Playita Mexican Restaurant in Memphis in April of 2007. The jury convicted Defendant of facilitation of aggravated robbery and facilitation of attempted aggravated robbery. After a sentencing hearing, Defendant was sentenced to consecutive sentences of ten years for facilitation of aggravated robbery and eight years for facilitation of attempted aggravated robbery. Defendant did not file a motion for new trial or seek a direct appeal. He filed a petition for post-conviction relief in October of 2011, in which he alleged, among other things, that he received ineffective assistance of counsel when trial counsel failed to file a motion for new trial. The post-conviction court granted leave for Defendant to file a delayed appeal pursuant to Tennessee Code Annotated section 40-30-113(a)(3) and Tennessee Supreme Court Rule 28, Section 9. Defendant filed a motion for new trial. The motion was denied by the trial court and this appeal followed. Defendant presents the following issues for our review on appeal: (1) whether the evidence was sufficient to support the convictions; and (2) whether the trial court erred by refusing to allow a defense witness to testify whether he could identify Defendant from a still photograph taken from surveillance video of the incident. After a review, we determine that the evidence was sufficient to support the convictions for aggravated robbery and attempted aggravated robbery. Additionally, we determine that the trial court did not err by excluding the opinion testimony of a lay witness that was not helpful to a determination of a fact in issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joseph A. McClusky (on appeal) and Scott Hall (at trial), Memphis, Tennessee, for the appellant, Talmadge Hurt.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

The underlying facts are set forth in this Court's opinion in the direct appeal of the co-defendant, Adrian Chaney, as follows:

> In September of 2009, [Chaney] and [Defendant] were indicted for one count of aggravated robbery and one count of attempted aggravated robbery for events that took place at La Playita Mexican Restaurant in Memphis on April 7, 2007.
>
> At trial, Whitney Horton and Melissa South, the victims, both testified that they were working at the Memphis Humane Society on April 7, 2007. They left work around noon to get lunch at La Playita Mexican Restaurant. As they entered the restaurant to place their take-out orders, they noticed two African-American men outside. One of the men was described as larger than the other, wearing a black letterman jacket with orange sleeves and a baseball cap over his long, twisted hair. The other man was described as smaller, wearing a dark gray hooded sweatshirt.
>
> The victims walked into the restaurant, ordered their food, and sat down on a small bench near the entrance to wait for their order. After about five minutes, one of the men from the parking lot came inside. He looked briefly around the restaurant when he entered. The other man followed soon thereafter, wearing a "red" bandana with white skulls and crossbones outlined in black over his face. The second man "did not hesitate" when he entered the restaurant. He was carrying a silver gun, went straight to the victims, and pointed the gun at Ms. Horton. The gun was about six inches away from her face. She was "scared for [her] life if not more." The assailant mumbled something before grabbing her purse. Ms. Horton described the purse as "[w]hite with multicolored hearts on it

and bright pink straps." Inside the purse was Ms. Horton's wallet, checkbook, twenty dollars in cash, an iPod, and car keys.

The assailant next approached Ms. South; she refused to relinquish her purse. At that point, the assailant attempted to cock the gun. Ms. Horton screamed. Restaurant employees ran toward them and the men left the restaurant. Ms. Horton stayed inside while Ms. South ran outside to call 911 and try to see in which direction the assailants had escaped. Ms. South and other witnesses from a nearby nail salon saw the two men run to a large, gold sedan that looked like a Crown Victoria or Buick Regal with dark tinted windows. The car took off at a normal speed.

Ms. Horton's purse was later returned to her but the contents were missing. The victims were presented with photographic lineups during which they independently identified both [Chaney] and [Defendant]. [Chaney] was identified as the smaller assailant with the gun.

. . . .

Both victims identified [Chaney] and [Defendant] at trial. . . .

A video tape of the robbery from the restaurant surveillance camera was played for the jury. Additionally, during the investigation, the State learned that [Defendant] drove a gold Mercury Grand Marquis, a car with the same body style as the Ford Crown Victoria.

[Chaney and Defendant] did not testify at trial but presented several witnesses in their behalf. The majority of the witnesses testified that [Chaney and Defendant], brothers, did not have a history of always getting along. The various witnesses testified that the men were seen together at a barbeque at the home of their deceased uncle for the majority of the day that the robbery took place. There was testimony that the gold Mercury Grand Marquis was at the location of the barbeque on the day of the robbery. Further, there was testimony from [Chaney's] girlfriend that he helped her look at and clean a house for a portion of the day on which the robbery took place.

*State v. Adrian Chaney*, No. W2011-00141-CCA-R3-CD, 2013 WL 979100, at *1-2 (Tenn. Crim. App. Mar, 12, 2013). The following additional facts are included to assist with our determination of the issues presented in Defendant's appeal:

The victims described seeing Defendant and Chaney walking back and forth outside the restaurant prior to Defendant's entry into the restaurant. When Defendant entered La Playita, he approached the victims and asked them about the quality of the food at the restaurant. The victims did not talk to Defendant; he turned around and exited the restaurant. Once outside, he talked briefly to Chaney, engaged in a handshake gesture, and walked toward the nail salon next door before Chaney entered the restaurant wielding a gun.

During the investigation of the robbery, Officer Jerry Lloyd received information about the type of car used in the robbery. A car matching the description—a gold Mercury Marquis with chrome rims—was found parked in the front yard of a home on Berry Lane occupied by Defendant. Defendant was discovered to be the owner of the vehicle. He bought the 1998 Mercury Grand Marquis from Charles Brown in 2006. The car was repossessed by Mr. Brown at one point because Defendant failed to make payments. Mr. Brown testified at trial that even though Defendant owed him money for the car, he fixed a broken window, painted the car gold, and replaced the tires before he gave the car back to Defendant. Mr. Brown claimed that he drove the car to a barbeque at Defendant's house, which other witnesses testified occurred on the same day of the robbery.

At the conclusion of the proof, the jury found Chaney guilty of aggravated robbery and attempted aggravated robbery. Defendant, on the other hand, was convicted of the lesser included offenses of facilitation of aggravated robbery and facilitation of attempted aggravated robbery. Defendant was sentenced to ten years in incarceration for the facilitation of aggravated robbery conviction and eight years in incarceration for the conviction for facilitation of attempted aggravated robbery. The trial court ordered the sentences to be served consecutively. The judgments were entered on December 7, 2010.

Defendant did not file a timely motion for new trial. On October 5, 2011, Defendant filed a timely petition for post-conviction relief. In the petition, he alleged that he received ineffective assistance of counsel. Specifically, Defendant alleged that trial counsel's failure to file a timely motion for new trial effectively deprived him of the ability to appeal. He sought relief in the form of a late-filed motion for new trial. The post-conviction court granted a delayed appeal pursuant to Tennessee Code Annotated section 40-30-113(a)(3)[1] and Tennessee Supreme Court Rule 28, Section 9.[2]

---

[1] Tennessee Code Annotated section 40-30-113, provides, in pertinent part:

> (a) When the trial judge conducting a hearing pursuant to this part finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee and that there is an adequate record of the original trial proceeding available for a review, the judge can:

As a result of the grant of the delayed appeal, Defendant filed a motion for new trial and an amended motion for new trial. In addition to several other issues,[3] Defendant challenged both the sufficiency of the evidence and the trial court's refusal to allow a defense witness to testify whether he recognized Defendant from a photograph. The trial court denied the motion for new trial. Defendant appeals.

## *Analysis*

On appeal, Defendant argues that the evidence was insufficient to support his convictions and that the trial court erred by refusing to allow a defense witness to testify whether he could recognize Defendant from a photograph.

### *A. Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence for his convictions for facilitation of aggravated robbery and facilitation of attempted aggravated robbery. Defendant insists that the State failed to prove not only his role in the offenses but failed to prove beyond a reasonable doubt his identity as the perpetrator. The State points to the ample evidence presented at trial that established both Defendant's identity and his role in the crimes to support their argument that the evidence was more than sufficient to sustain the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes

---

. . . .

(3) If no motion for a new trial was filed in the original proceeding, authorize a motion to be made before the original trial court within thirty (30) days. The motion shall be disposed of by the original trial court as if the motion had been filed under authority of Rule 59 of the Rules of Civil Procedure.

[2] This rule provides for the grant of a delayed appeal by a trial court in pertinent part as follows:

(a) Appeal as of Right Pursuant to Rule 3, Tennessee Rules of Appellate Procedure--

Upon determination by the trial court that the petitioner was deprived of the right to file an appeal pursuant to Rule 3, Tennessee Rules of Appellate Procedure, the trial court shall apply the procedures set out in Tennessee Code Annotated section 40-30-113.

[3] These issues, not raised on appeal, are deemed waived.

the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Aggravated robbery, as relevant to this appeal, is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." T.C.A. §§ 39-13-401, -402. "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tennessee Code Annotated section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." *Id.* § 39-11-403(a). Criminal attempt is committed when a person, "acting with the kind of culpability otherwise required for the offense," does one of the following:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

*Id.* § 39-12-101(a).

Defendant argues that the proof failed to establish his participation in the robbery. However, there was ample proof that Defendant and Chaney were together and acted in concert. They were seen standing together talking outside the restaurant as the victims entered to buy their lunch. Defendant was then seen pacing back and forth outside the restaurant as the victims waited for their food. Defendant eventually entered the restaurant and made small talk with the victims before walking back outside. Once outside, Defendant spoke to Chaney, and gave him a special hand-shake before Chaney entered the restaurant and robbed one of the victims. A defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). Moreover, in the excitement that followed the robberies, Ms. South was able to see Chaney exit the restaurant and flee to the left, where she caught a glimpse of a gold car with tinted windows. Two additional witnesses from next door confirmed that a gold Crown Victoria-like car pulled away from the restaurant. A vehicle matching that description belonged to Defendant at the time of the robbery. From this evidence, a reasonable jury could conclude that Defendant entered the restaurant to scope out the interior of the establishment for Chaney and then further assisted him by driving the getaway car. These actions certainly could be interpreted by the jury as knowingly furnishing substantial assistance to Chaney in the commission of the aggravated robbery and attempted aggravated robbery.

Defendant also challenges the establishment of his identity as the perpetrator. "The identity of the perpetrator is an essential element of any crime." *State v. Robert Wayne Pryor*, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App. Apr. 19, 2005) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." *Id.* (citing *State v. Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing *State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. *Strickland*, 885 S.W.2d at 87 (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). In addition, "the testimony

of a victim, by itself, is sufficient to support a conviction." *Id.* (citing *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)); *State v. Joshua Smith*, No. W2012-01059-CCA-R3-CD, 2013 WL 6095831 (Tenn. Crim. App. Nov. 19, 2013), *perm. app. denied*, (Tenn. Mar. 17, 2014).

Both victims positively identified Defendant from photographic lineups and again at trial. Further, as mentioned above, the car owned by Defendant matched the description of the car seen leaving the scene of the crime. While Defendant presented witnesses who testified that he attended a family barbeque the entire day of the robbery, several of the witnesses could not recall with specificity either the times of the barbeque or the exact date on which it occurred. The assessment of the credibility of the witnesses and the weight and value of the evidence are entrusted to the jury as the trier of fact. We will not reevaluate the evidence on appeal. *Pruett*, 788 S.W.2d at 561. The jury heard the proof and clearly chose to disbelieve the version painted by defense witnesses. The proof was sufficient to establish Defendant's identity and that his actions justified a finding of guilty for both convictions—facilitation of aggravated robbery and facilitation of attempted aggravated robbery. Defendant is not entitled to relief on this issue.

### B. Opinion Testimony of Lay Witness

Defendant insists that it was error for the trial court to exclude the testimony of defense witness Deaderick Sears during which Mr. Sears was asked if he recognized Defendant in two photographs taken from the surveillance video at the restaurant. Defendant cites Tennessee Rule of Evidence 704 to support his position. Specifically he argues that Mr. Sears would have provided evidence critical to the defense, his opinion bore sufficient indicia of reliability, and there was no interest supporting the exclusion of the evidence. The State disagrees, citing Tennessee Rule of Evidence 701 to support their position.

To begin our analysis, we note that the admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. Barry D. McCoy*, No. M2013-00912-SC-R11-CD, ___S.W.3d ___, 2014 WL 6725695, at *5 (Tenn. Dec. 1, 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993). When the admission or exclusion of opinion evidence is challenged on appeal, it is reviewable only for abuse of discretion. *See, e.g., State v. Gray*, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997). An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is generally admissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of delay, waste of time, or needless presentation of cumulative evidence. Tenn. R. Evid. 403.

Rule 701 of the Tennessee Rules of Evidence, entitled "Opinion Testimony by Lay Witnesses" provides as follows:

> (a) Generally. If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) rationally based on the perception of the witness and
>
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

The Tennessee Rule is nearly identical to its federal counterpart. The Tennessee rule, as amended in 1996, reflects the trend in favor of allowing lay opinion testimony under certain circumstances:

> Although American law traditionally has treated lay opinion testimony as an unpopular relative who keeps appearing at family reunions, there is now a recognition that this relative not only should be invited to the gathering but may be a contributing part of the family. . . . The reason for this [trend in favor of allowing the admission of lay opinion testimony] is simple: sometimes lay opinion testimony is both necessary and valuable. The lay witness may not be able to provide helpful proof without giving an opinion. For example, how could a witness testify about age, identity, speed, or height without delving into the realm of opinion? What is helpful is the witness's total impression, not the constituent elements.

Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, *Tennessee Law of Evidence* § 7.01[3] (6th ed. 2001). Thus, a lay person may, as appropriate, testify as to his or her personal observation of a fact or event in the form of an opinion commonly understood by most people. *See State v. Wingard*, 891 S.W.2d 628, 636 (Tenn. Crim. App. 1994).

A witness's lay opinion testimony is admissible only when the jury could not readily draw its own conclusions on the issue without the witness's lay opinion or where the witness cannot effectively testify without stating the inference or opinion. *State v. Schiefelbein*, 230 S.W.3d 88, 130 (Tenn. Crim. App. 2007). The lay opinion testimony should be based on admissible facts which are in evidence. *State v. Boggs*, 932 S.W.2d 467, 474 (Tenn. Crim. App. 1996). While expert opinion is based on a process of reasoning which can be mastered only by specialists in the field, lay opinion should be based on a process of reasoning drawn from everyday life. *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992). A lay opinion should be within the range of knowledge or understanding of ordinary laymen. *Boggs*, 932 S.W.2d at 474. In other words, opinions permissible under Tennessee Rule of Evidence 701 must be based on the witness's own observations, should require no expertise, and ought to be within the range of common experience. *State v. Samuel*, 243 S.W.3d 592, 603 (Tenn. Crim. App. 2007).

Common examples of lay witness testimony include: (1) testimony regarding the speed at which a car is traveling, *Kim v. Boucher*, 55 S.W.3d 551, 555-56 (Tenn. Ct. App. 2001); (2) testimony about whether a child was afraid, *Schiefelbein*, 230 S.W.3d at 130; (3) testimony about whether a person was physically impaired, *Boggs*, 932 S.W.2d at 474; (4) testimony about whether a person was intoxicated, *see Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 75 (Tenn. Ct. App. 1990); (5) testimony about whether an injury looked like a cigarette burn, *Brown*, 836 S.W.2d at 550; (6) testimony that an injury caused by digging a fingernail into the victim's skin was recent, *Samuel*, 243 S.W.3d at 603; and (7) testimony that a door looked like it had been pried open and a footprint was similar to the defendant's, *State v. Anthony Duran Hines*, No. M2007-00493-CCA-R3-CD, 2008 WL 2026113, at *1-2 (Tenn. Crim. App. May 12, 2008), *perm. app. denied* (Tenn. Oct. 6, 2008). However, lay opinion testimony may be improper where the witness giving the lay opinion effectively usurps the function of the jury. *United States v. Grinage*, 390 F.3d 746, 750-51 (2d Cir. 2004) (holding that testimony interpreting both phone calls that the jury heard and calls the jury did not hear and making inferences highlighting similarities between the defendant's calls and others made in furtherance of a conspiracy was not permissible lay opinion testimony under Federal Rule of Evidence 701). Additionally, we note that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tenn. R. Evid. 704.

With regard to the case herein, Defense counsel sought to introduce the testimony of Mr. Sears, a friend of Defendant, to testify whether the person on the videotape was actually Defendant. Applying Rule 701, we can easily determine that Mr. Sears's proposed testimony certainly would be rationally based on his own perception of the photograph. While he was not present at the event itself, this is not a requirement of the rule. Mr. Sears was familiar with Defendant—he testified that he went to school with

and played ball with Defendant for a number of years—and he was, therefore, certainly familiar with Defendant's appearance. Mr. Sears could have looked at the photographs in question and given a rationally-based opinion as to whether the person in the photographs looked like Defendant. However, there was no indication that this opinion testimony would have been helpful to a clear understanding of the ultimate issue: Defendant's identity. Both victims had already identified Defendant as the perpetrator from a photographic lineup and again at trial. The surveillance camera videotape, albeit poor in quality,[4] was played for the jury. Defendant was present at counsel table throughout the trial. There was no suggestion that Defendant had radically changed his appearance prior to either the robbery or trial. The jury was in the same position as Mr. Sears in evaluating the surveillance camera video. Thus, Mr. Sears's opinion was not admissible, as the jury could draw its own conclusions on the issue without the witness's lay opinion. *Schiefelbein*, 230 S.W.3d at 130. In other words, the testimony of Mr. Sears was not "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue" and was, in our view, also cumulative and irrelevant. Consequently, the trial court did not abuse its discretion in excluding the testimony. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

---

[4] The surveillance tape was, according to the trial court, "one of the poorest quality videos . . . ever seen."